IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
: CASE NO. 5:12-bk-01316-RNO
SHERI L. ROODHOF :
AKA SHERI LYNN GILIAM :
: CHAPTER 7
               Debtor :
************************************ : ****************************************
:
JOSEPH ROODHOF :
:
               Plaintiff :
:
v. :
:
SHERI L. ROODHOF :
:
               Defendant : ADVERSARY NO. 5:12-ap-00153-RNO

# OPINION[1]

The instant Adversary Proceeding commenced by way of Plaintiff, Joseph Roodhof's, ("Plaintiff" or "Creditor") Complaint filed on May 29, 2012. The Complaint contains five counts: one count praying for the denial of dischargeability for a particular debt, and four counts objecting to the Debtor/Defendant, Sheri L. Roodhof's, ("Defendant" or "Debtor") Chapter 7 discharge. A trial on the merits was held on December 13, 2012. Plaintiff filed his post-trial brief on February 14, 2013, and Defendant followed with her own post-trial brief on March 16, 2013. This case is now ripe for decision.

The crux of the issue is two-fold: (1) whether Defendant's actions constitute grounds to deny discharge of a particular debt to her husband, and (2) if they are grounds to deny her a Chapter 7 discharge outright. For the reasons stated below, I find Plaintiff's debt to be excepted

---

[1]     Drafted with the assistance of Joseph C. Barsalona II, Esq., Law Clerk.

from discharge under 11 U.S.C. § 523(a)(6).[2] In contrast, I find that the Plaintiff has not proven any of the counts that would deny the Debtor's Chapter 7 discharge entirely.

I.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

II.   FINDINGS OF FACT

Sheri L. Roodhof commenced her voluntary Chapter 7 case on March 7, 2012. For thirteen years she has been, and continues to be, an employee of the Monroe County Commissioners, where she is a Monroe County Domestic Relations Conference Officer. Trial Tr. 38:3-8. She presently has a pension through her employer. Trial Tr. 24:2-10; 38:10. This pension is not listed on her Schedule B. Trial Tr. 39:8-12.

The Defendant and Joseph Roodhof were married on June 10, 2000. Trial Tr. 4:18. They have two children together and during the marriage lived in the Plaintiff's house. Trial Tr. 5. After eleven years of marriage, the couple separated in July 2011. Trial Tr. 4; 35.

Before the couple officially separated, a series of events took place at the Plaintiff's home which led to this litigation. The Debtor left the Plaintiff's house, with her children, sometime in the early spring of 2011. Trial Tr. 35:15-20. Her husband began moving items out of the house, to an undisclosed location, sometime in April or May of 2011. Trial Tr. 35-36. Soon thereafter, the Debtor filed for child support, in June 2011. Trial Tr. 36:10-13. Child support payments did not commence, however, until September 2011. Trial Tr. 36:14-16.

---

[2]    Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

On July 5, 2011, Joseph Roodhof came home to find many items missing from the home. Trial Tr. 5-11. Fixtures and personal items were removed, he observed damage in the areas where certain items were removed. *See generally* Trial Tr. 5-19. For example, where a dishwasher was taken, the wires connecting the appliance to the wall had been cut and the surrounding floor tiles were smashed. Trial Tr. 10-11; 13. Photographic evidence showing the extent of the damage was admitted into evidence at trial.

On July 11, 2011, the Monday after the first discovery by the Plaintiff, he again came home to find more items missing. Trial Tr. 21-22. This time, he found that "lights" and ceiling fans were removed from the home. Trial Tr. 20-22. Many wires were exposed after the lights were taken. *Id.* As a result of these events, the Plaintiff was compelled to purchase replacement items and make numerous repairs in order to make the home livable. Trial Tr. 22-23. At no time were any of the taken items listed on the Debtor's bankruptcy schedules.

### III. DISCUSSION

#### A. Count One, Dischargeability Under § 523(a)(6)

In examining a discharge-exception claim under § 523, it is important to note that all § 523 exceptions are construed strictly against creditors and liberally in favor of debtors. *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995); *In re Gotwald*, 488 B.R. 854, 865 (Bankr. E.D. Pa. 2013); *Jou v. Adalian (In re Adalian)*, 481 B.R. 290, 297 (Bankr. M.D. Pa. 2012) [hereinafter *Adalian II*]. For that reason, the burden of proof lies squarely on the creditor. *Cohn*, 54 F.3d at 1113; *Gotwald*, 488 B.R. at 865. The creditor must prove the elements under § 523 by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Adalian II*, 481 B.R. at 297.

3

Count One seeks to deny dischargeability of the Plaintiff's debt "for willful and malicious injury by the debtor . . . to the property of another entity." 11 U.S.C. § 523(a)(6). "Willful" and "malicious" have their own special meanings in the bankruptcy context. "Willful" refers to a deliberate or intentional injury, not just a deliberate or intentional act that may lead to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *In re Kates*, 485 B.R. 86, 100 (Bankr. E.D. Pa. 2012); *Adalian II*, 481 B.R. at 297. Thus, actions taken either for the purpose of causing injury or that have a substantial certainty of producing injury are deemed "willful" under § 523(a)(6). *In re Conte*, 33 F.3d 303, 307-09 (3d Cir. 1994).

Similarly, "malice" has a unique meaning in the § 523(a)(6) context: "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Jou v. Adalian (In re Adalian)*, 474 B.R. 150, 163 (Bankr. M.D. Pa. 2012) [hereinafter *Adalian I*]; *In re Vidal*, No. 10-14071, 2012 WL 3907847, at *28 (Bankr. E.D. Pa. Sept. 7, 2012); *In re Coley*, 433 B.R. 476, 498 (Bankr. E.D. Pa. 2010). In this Circuit, a subjective standard is used to determine the intent of the debtor, in that the debtor must have "actual knowledge" that harm to the creditor was substantially certain to occur. *See, e.g.*, *In re Conte*, 33 F.3d at 307-09; *Adalian II*, 481 B.R. at 297; *In re Glenn*, 470 B.R. 731, 736 (Bankr. M.D. Pa. 2012). One can prove "malicious" intent through evidence of the "debtor's knowledge of the creditor's right and the debtor's knowledge that the conduct will cause particularized harm." *In re Glenn*, 470 B.R. at 736 (citing *In re Paul*, 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001)).

At trial, the Plaintiff provided ample evidence of destruction caused to his home and personal property via testimony and authenticated pictures of the damage. This destruction includes the following:

4

- Two garage door keypads were taken and the wires cut. Trial Tr. 7:9-21.
- A washing machine and dryer were taken. Trial Tr. 8:5-14.
- An oven range, a microwave, and a dishwasher were taken, resulting in damage to the surrounding floor. Trial Tr. 10:19-25; 11:3-17.
- A television was taken from its mounting on the wall, creating holes in the drywall. Trial Tr. 16:15-20; 17:12-18.
- Ceiling fans and lamps were taken from multiple rooms. Trial Tr. 20:22-25.

Any question over who might have caused the damage was removed when the Defendant admitted taking the property with the help of at least four people. *See* Trial Tr. 46:19-25; 47:1-4 (Defendant testified that her grandfather, mother, boyfriend, and "other friends" helped her remove the property from the Plaintiff's house). She testified that her assistants did not intentionally cause harm to the home and that they "tried to work together" during the removal of items. Trial Tr. 47:5-11. However, the Defendant did not *guarantee* that she watched everyone at all times, keeping the assumption alive that the others might have caused some damage. *Id.*

At trial and in her brief, the Defendant does not deny her actions, but instead asks this Court to excuse them due to the contentious divorce entangling both parties. Trial Tr. 16:22-25; Pl.'s Post-trial Br. 4-6. The question for me, then, is whether there exists a "divorce exception," or something similar, to a § 523(a)(6) claim.

While this is a question of first impression for this Court, other bankruptcy courts have not found a pending divorce as an excuse for, or relevant to, a § 523(a)(6) analysis. *See Shteysel v. Shteysel (In re Shteysel)*, 221 B.R. 486, 489-91 (Bankr. E.D. Wis. 1998) (holding "stormy marriage" was not an excuse for debtor's egregious § 523(a)(6) conduct); *Sielschott v. Reimer (In re Reimer)*, 182 B.R. 816, 818-19 (Bankr. E.D. Mo. 1995) (violation of court order to pay child support during contentious divorce was grounds for willful and malicious injury); *Straub v.*

5

*Straub (In re Straub)*, 192 B.R. 522, 526-27 (Bankr. D.N.D. 1996) (conversion by one spouse of other spouse's property during pending divorce sufficient for § 523(a)(6) finding). I follow this line of cases and hold that a pending separation or divorce is not an excuse for conduct that otherwise would satisfy § 523(a)(6).

When a couple separates, it is normal for the ex-spouses to have ill-will towards one another, especially when there are children involved. No matter how difficult the situation becomes, though, the parties are not given a free pass to cause physical harm to the person or property of each other. Although the bankruptcy court is not the forum for these disputes to be aired out, it cannot turn a blind-eye if one of the spouses, as a debtor, violates a section of the Bankruptcy Code.

Here, the Defendant surreptitiously entered the Plaintiff's house with a group of friends and family with the intent to take property. I find that the removal of items which were necessary for the Plaintiff's everyday use of the house as a residence (e.g. dishwasher, ceiling fans, etc.), the Debtor/Defendant evinced the requisite intent to willfully and maliciously injure the Plaintiff and his property. Whether the personal property removed belongs to the Plaintiff or Defendant is a matter to be resolved in state court; yet, the house itself was damaged by the Debtor's willful and malicious actions, satisfying the § 523(a)(6) burden. Such damage was evident in the photographs offered by the Plaintiff. Also, the Debtor transferred the property before any tribunal decided to whom the property belongs. Until such a ruling is made, the resulting debt owed by Defendant stemming from the willful and malicious injury to the Plaintiff's property must be excepted from discharge.

Thus, the Plaintiff's debt is excepted from discharge under § 523(a)(6). However, I do

6

not here make a finding on the amount of damages as I believe that is the jurisdiction of the state court. I simply hold that the claim for any wrongful removal and damages caused to the Plaintiff's household is nondischargeable. The amount of such claim should be determined in a subsequent state court proceeding.

### B. Counts Pertaining to Denial of Discharge Under § 727

Plaintiff coupled his § 523 dischargeability count with four counts under § 727 seeking, under different grounds, to deny the Debtor a Chapter 7 discharge. I turn now to each of those in turn.

"Congress described § 727's discharge provision as the heart of the fresh start provisions of the bankruptcy law." *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977)). As a result, bankruptcy courts must construe the provision liberally in favor of the debtor. *Id.*; *see also In re Burgess*, 955 F.2d 134, 136 (1st Cir. 1992); *In re Adeeb*, 787 F.2d 1339, 1342 (9th Cir. 1986). Ultimately, the death knell of a denial of discharge is a severe sanction and must be "considered with great care." *In re Yanni*, 354 B.R. 708, 711 (Bankr. E.D. Pa. 2006). Procedurally, it is the Plaintiff's burden to prove an objection to discharge by a preponderance of the evidence. *See Grogan*, 498 U.S. at 289 (Congress instructed that the standard of proof under § 727 is preponderance of the evidence).

#### i. Count Two, Denial of Discharge Under 727(a)(2)

The first § 727 claim seeks to deny the Debtor a discharge pursuant to subsection (a)(2)(A). Section 727(a)(2)(A) allows for a denial of discharge when:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated

7

>     or concealed –
>         (A)   property of the debtor, within one year
>               before the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(A) (emphasis added).

Under this provision, a plaintiff has the burden of proving: (1) a transfer or concealment of property; (2) that belonged to the debtor; (3) that occurred within one year of the petition date; and, (4) that was undertaken with actual intent to hinder, delay, or defraud one or more creditors or the bankruptcy trustee. *Rosen*, 996 F.2d at 1531; *United States Trustee v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005).

Elements 1 and 3 were proven by the Plaintiff at trial. Debtor transferred the numerous items out of Plaintiff's house with the help of her father and boyfriend, among others, and relocated them to a different location. Trial Tr. 40-42; 46. She admitted as such. *Id.* at 40; 46. The third element of the *Rosen* test is obviously met: the critical event took place on July 5th and 6th of 2011, and the Debtor filed her petition on March 7, 2012. Trial Tr. 5.

However, the other two elements, 2 and 4, were not proven by a preponderance of the evidence. First, there is a debate over ownership of the items taken. During their eleven-year marriage, the couple lived in the same house. Trial Tr. 5. That house, though, is owned by Joseph Roodhof. *Ibid.* The question of ownership, then, could be answered in three ways: Sheri's, Joseph's, or joint. Neither the Plaintiff nor Defendant provided the Court with adequate proof of ownership by either one of them; thus, for purposes of this test, I cannot find that the transferred property "belonged to the debtor."

Similarly, there was no concrete or convincing proof shown that the Debtor had the requisite intent on the date in question to satisfy the last prong of the *Rosen* inquiry. This was,

8

and continues to be, a highly contentious divorce between ex-spouses. After the Debtor transferred property, the Plaintiff responded by throwing her clothes into the pool, Trial Tr. 42, and taking the refrigerator, Trial Tr. 42. The transfers may have consequence in state court during divorce proceedings and should not be played out in bankruptcy court. They also do not give rise to the requisite subjective intent required under § 727(a)(2)(A). Thus, Count Two fails.

### ii. Count Three, Denial of Discharge Under 727(a)(3)

The second § 727 claim for objection to discharge is one under subsection (a)(3). A denial of discharge under § 727(a)(3) is warranted where:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, **unless** such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C. § 727(a)(3) (emphasis added). Essentially, this section requires a debtor to produce adequate documentation to inform creditors of the debtor's financial and business transactions. *Adalian I*, 474 B.R. at 164; *Gray v. Jackson (In re Jackson)*, 453 B.R. 789, 796 (Bankr. E.D. Pa. 2011) (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)). When applied to consumer debtors, "a sudden and large dissipation of assets, coupled with a lack of books and records will provide a basis for denial of discharge under this section." *PNC Bank, N.A. v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 98 (Bankr. W.D. Pa. 2000) (internal quotation marks omitted).

The Third Circuit's test under this provision is two-fold: (1) the debtor failed to maintain and preserve adequate records; and (2) this failure to maintain makes it impossible to ascertain the debtor's financial condition and material business transactions. *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992); *Adalian I*, 474 B.R. at 164. Recall that the burden of proof is on

9

the plaintiff/creditor. *Grogan*, 498 U.S. at 289.

If the creditor meets its two-pronged burden, then the debtor must justify his/her inadequate recordkeeping under the circumstances. *Meridian Bank*, 958 F.2d at 1232-34; *In re Boyajian*, 486 B.R. 306, 312 (Bankr. D.N.J. 2013). Some of the factors the court should consider when analyzing the sufficiency of debtor's justification include: (1) debtor's education; (2) debtor's sophistication; (3) volume of debtor's business; (4) complexity of debtor's business; (5) amount of credit extended to debtor in his business; (6) any other circumstances that should be noted in the interest of justice. *Meridian Bank*, 958 F.2d at 1231; *Boyajian*, 486 B.R. at 312.

Here, the Debtor provided the Court with an adequate justification for the omitted transactions on her schedules, and therefore the § 727(a)(3) claim fails. While the Debtor removed many items from the couple's shared residence, the subsequent sales of those items were not listed on her schedules. Trial Tr. 36-37. This is enough proof to show that the Debtor did not have adequate records, and would make it more difficult for creditors to ascertain her financial condition. However, the Debtor has a valid justification for her omissions.

The timeline of events here is critical. Around April or May 2011, Joseph Roodhof began taking items from the house as the couple drifted apart. Trial Tr. 35. Sheri Roodhof then filed for child support in June 2011. Trial Tr. 36. Subsequently, the couple separated in July 2011, which unofficially began when the Debtor removed all of the personal property at issue. Trial Tr. 35. Finally, Mr. Roodhof did not pay any child support until the "support conference" in September 2011. Trial Tr. 36. During this time, the Debtor had custody of the couple's two children. Trial Tr. 6.

From this timeline it is reasonable to deduce that the Debtor sold whatever items were

10

Case 5:12-ap-00153-RNO   Doc 26   Filed 05/13/13   Entered 05/13/13 15:00:48   Desc
Main Document      Page 10 of 15

taken in July 2011 to support herself and her children during the separation. Indeed, the Debtor testified that she "had to start selling some [of her] personal items in order to pay for daycare, child's needs, place to stay, electric, [and] food." Trial Tr. 36. Furthermore, she testified that she only received "a couple hundred dollars" for all of the items sold. Trial Tr. 37.

Noting that the Debtor is not a sophisticated retailer by any means, one can assume that all of the proceeds from those sales would be listed in the checking account that the Debtor *did* account for on her Schedule B. The argument for not listing the transactions is further strengthened by the fact that the items were sold (1) well before the bankruptcy filing; (2) created de minimus returns to the Debtor; and (3) were made during a contentious divorce. All of these factors justify why the Debtor omitted the transactions from her schedules, and each one, individually, establish grounds to defeat the § 727(a)(3) claim.

### iii. Count Four, Denial of Discharge Under 727(a)(4)

The penultimate count seeks to deny the Debtor a Chapter 7 discharge pursuant to § 727(a)(4)(A). This section denies a discharge where:

> (4) the debtor knowingly **and** fraudulently, in or connection with the case—
> (A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A) (emphasis added). The related case law states that to succeed under this provision the Plaintiff must prove: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992); *Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 312 (Bankr. E.D. Pa. 2006); *Moore v. Strickland (In re Strickland)*, 350

11

B.R. 158, 163 (Bankr. D. Del. 2006).

This section applies to any and all false statements made in a debtor's bankruptcy petition and accompanying schedules. *Spitko*, 357 B.R. at 312 (citing *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 575 (Bankr. N.D. Ill. 2000)). However, "[p]roof of failure to disclose alone is not sufficient to establish the element of intent." *Estate of Stanford Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 785 (Bankr. E.D. Pa. 2004) (citing *Applebaum v. Henderson (In re Henderson)*, 134 B.R. 147, 160 (Bankr. E.D. Pa. 1991)). If the omission or false statement is inadvertent or due to mistake, then a Chapter 7 discharge will not be denied under this section. *Id.*; *Henderson*, 134 B.R. at 162; *Giel v. Brooks (Matter of Brooks)*, 58 B.R. 462, 467 (Bankr. W.D. Pa. 1986). Finally, "the advice of counsel may provide an excuse for an inaccurate or false oath." *In re Georges*, 138 F. App'x 471, 472 (3d Cir. 2005) (citing *In re Topper*, 229 F.2d 691, 692 (3d Cir. 1956)).

At trial, the Plaintiff stated, and the Debtor admitted, that Debtor's pension plan with the Monroe County Commissioners is not stated on her Schedule B. Trial Tr. 24; 38-40. At least facially, then, the Debtor made a false statement to her creditors by not listing this retirement plan. However, Debtor's testimony told a different story.

The following colloquy ensued after a question regarding her pension:

> Q: When is the first time you would receive th[e] pension or when
> . . . do you start receiving that pension?
> A: I was eligible to participate within – paying towards the pension when I first started there, it's a mandatory deduction. I'm not allowed to touch it, the whole County has to pay into it.
> . . .
> A: The only time you get it is when you retire.

Trial Tr. 38. And when asked why she didn't list the pension on her schedules she replied:

12

Case 5:12-ap-00153-RNO    Doc 26    Filed 05/13/13    Entered 05/13/13 15:00:48    Desc
Main Document      Page 12 of 15

> A: I was always told that it wasn't able to be touched by myself so I don't honestly even think about it when, you know, doing anything because I'm not receiving a benefit from it.

Trial Tr. 39. Coupling these statements with the Debtor's credibility on the stand, I am persuaded that the Debtor chose to omit her pension from her Schedule B due to an incorrect, but good faith, belief that the pension is immaterial to her bankruptcy. In further support of this position, Debtor testified that both her "domestic attorney" and her husband's "domestic attorney" knew about the pension, yet never advised her to include it on her schedules. Parties rely on their attorneys to advise them on what assets need to be listed on one's schedules; the law does not put the burden on laymen to make these decisions if they are not pro se. Thus, I find the omission of the pension to be the result of mistake, and the requisite intent to "knowingly and fraudulently" make a false oath under § 727(a)(4)(A) did not exist.

### iv. Count Five, Denial of Discharge Under § 727(a)(5)

The final § 727 objection to discharge is rooted in subsection (a)(5). Under this provision, a discharge is denied if "the debtor fail[s] to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). It applies to any "unexplained disappearance or shortage of assets, and does not require a showing of fraudulent intent." *Nelson v. Kamara (In re Kamara)*, No. 10-55491, 2012 WL 5879718, at *4 (Bankr. D. Del. Nov. 20, 2012) (citing *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 668 (Bankr. S.D.N.Y. 2008)).

Like § 727(a)(3), this provision contains a burden-shifting inquiry. First, the creditor must show that the debtor at one time owned tangible assets that are no longer available to creditors. *In re Jacobs*, 381 B.R. 147, 168 (Bankr. E.D. Pa. 2008) (citing *Bodenstein v.*

13

*Wasserman (In re Wasserman)*, 332 B.R. 325, 333 (Bankr. N.D. Ill. 2005)). If the creditor meets his burden, then the burden shifts to the Debtor to give a "satisfactory explanation" for why the assets are no longer available. *Jacobs*, 381 B.R. at 168.

"To explain satisfactorily" is a broad term that is not defined in the Code. *In re Kamara*, 2012 WL 5879718, at *4. Court's interpreting the phrase have held that the debtor's explanation "must be worthy of belief and appear reasonable, such that the court no longer wonders what happened to the assets." *Id.* (citing *Panda Herbal Int'l v. Luby (In re Luby)*, 438 B.R. 817, 834 (Bankr. E.D. Pa. 2010) (internal quotations omitted)). This "explanation must consist of more than vague, indefinite, and uncorroborated assertions." *GMAC Inc. v. Coley (In re Coley)*, 433 B.R. 476, 490 (Bankr. E.D. Pa. 2010) (internal quotations omitted). However, the debtor is not compelled to present documentary evidence for an explanation to be satisfactory; the burden can be met with oral testimony. *In re Hudgens*, 149 Fed. App'x 480, 488 (7th Cir. 2005); *see also In re Kamara*, 2012 WL 5879718, at *4 (documentation is preferable but not necessary). Essentially, it is the bankruptcy judge's assessment of the debtor's credibility and consistency that will [help the most] in finding a satisfactory explanation. *In re Kamara*, 2012 WL 5879718, at *4; *see also First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir. 1983) (bankruptcy judge's credibility assessment is a critical finding of fact that will only be overturned if clearly erroneous); *Kentzer v. Larkin*, 178 F.2d 532, 533 (2d Cir. 1949) (debtor's "contradictory and hardly credible testimony" led to denial of discharge).

During the trial, I found Sheri Roodhof to be credible and consistent. She was honest about taking the items in July 2011, Trial Tr. 40-42, and about her need to sell those items to support her children and her family before Joseph Roodhof made a single support payment.

14

Trial Tr. 35-37.  Also, notwithstanding the creditor's claim to the contrary, I find the Debtor's account of when the jewelry was sold, in April 2011, to be more convincing than the claim that it was taken in July 2011.  Trial Tr. 37.  Finally, the omission of the Debtor's pension from Schedule B was satisfactorily explained for purposes of § 727(a)(5) due to a mistaken belief by the Debtor; this mistake is more thoroughly discussed in section III.iii of this Opinion.  Thus, for all these reasons, the Plaintiff's § 727(a)(5) claim fails.

IV. **CONCLUSION**

For the reasons stated above, I hold that Joseph Roodhof's property damage claim is excepted from the Debtor's Chapter 7 discharge pursuant to § 523(a)(6).  Furthermore, I find that the Plaintiff has not satisfied his burden under § 727(a)(2), (3), (4), or (5).  Therefore, the Debtor will not be denied a discharge of her remaining debts.  An Order will be entered consistent with the foregoing Opinion.

By the Court,

*[signature]*

Date: May 13, 2013

Robert N. Opel, II, Bankruptcy Judge

(BI)